Cowles & Eldridge v. Burns.

JOSEPH N. COWLES AND JOSEPH B. ELDRIDGE, *Partners,*
&c., v. JOHN V. BURNS.

1. PAROL AGENCY, *Competent Evidence of.* It is competent to prove a parol
agency and its nature and scope, by the testimony of the person who
claims to be the agent; and the acts done by the agent may also be
proved by the testimony of such person where he testifies the acts were
done at the request and by the authority of the principal.

2. FIRM, *When Bound by Acts of Agent.* Where a person living in Kansas
makes an arrangement with a banking firm in another state to loan money in
his own name in this state upon notes secured by real-estate mortgages, and
to indorse for a valuable consideration the notes and mortgages to the
firm, and the firm constitutes by parol authority the payee of the notes
its agent to receive payment thereon, *whether the notes are due or not,*
and to release the mortgages of record — it being agreed between the
firm and its agent that upon the payment of any note it was to be rein-
dorsed and transferred back to the agent — and the payee acts in ac-
cordance with such express authority, and releases a mortgage in his
own name, the firm is bound thereby, although the agent has not the
possession of the note and mortgage at the time of the release thereof.

### Error from Allen District Court.

FEBRUARY 21st 1881, *Jos. N. Cowles* and *Jos. B. Eldridge,*
partners as Cowles & Eldridge, brought suit against *John V.
Burns,* Lucy Burns, and W. H. Clinchy, to recover $1,000
and interest on a mortgage bond dated the 1st day of October,
1878, executed by John V. Burns to one J. W. Stover, and
by him assigned, and to foreclose a mortgage given by said
Burns to secure the payment of said bond, conveying sec. 21,
tp. 24, south, of range 20, east, containing six hundred and
forty acres, situate in the county of Allen. The petition al-
leged that after the execution of the mortgage John V. Burns
intermarried with the defendant Lucy Burns, and further al-
leged that the defendant W. H. Clinchy claimed some right
or title to the land in the mortgage described, by purchase
from the defendant John V. Burns, but that said purchase
was long subsequent to the date of the mortgage referred to,
and subject to the same. On the 21st day of March, 1881,
the defendants John V. and Lucy Burns filed their answers.

They pleaded a want of consideration for the bond and mortgage; that the mortgage had been duly discharged and released of record long before the filing of the petition; and that the plaintiffs, prior to and at the time of the alleged assignment and transfer of the mortgage bond to them, had full and complete knowledge that the same was executed without any consideration whatever. The defendant W. H. Clinchy filed his answer on the 12th of May, 1881, and alleged that J. W. Stover was the agent of plaintiffs in placing loans in the state of Kansas for them as well as in collecting the loans; that the said Stover, as such agent, negotiated with said John V. Burns for a loan to Burns, and requested Burns to execute the bond and mortgage sued upon for the purpose of forwarding them to the plaintiffs for their approval before receiving any money thereon, which was done accordingly; that at the time of forwarding the bond and mortgage said Stover indorsed the same and caused the mortgage to be recorded in the office of the register of deeds of Allen county, and that no part of the money represented by the bond or mortgage was ever delivered to Burns, nor was there any consideration therefor; that no consideration or money passed from the plaintiffs to Stover at the time of the transfer of the bond, except that plaintiffs in their account with Stover credited the same against him; that the transfer to plaintiffs was not in the usual course of business; that plaintiffs are not *bona fide* holders thereof, and that the transfer, though in form of an assignment, was simply a delivery from agent to principal; that afterward said Stover released the mortgage of record, and charged the amount thereof against himself in his account with plaintiffs, and that afterward said defendant, for a valuable consideration, to wit, the full value of the land, received a conveyance of the land by warranty deed, without notice, either actual or constructive, of the existence of the mortgage or of any interest of the plaintiffs therein. The answer further alleged that said defendant was the owner of and in the actual possession of the premises, and that the claims set forth in the petition operated to cloud

3 — 28 KAS.

his title, and therefore he prayed that his title might be quieted as against the plaintiffs. Trial had at the June Term of the court for 1881, by the court with a jury. The jury returned a verdict for the defendants, and also the following findings:

"Q. 1. Did the defendant Burns execute the bond, coupons and mortgage sued on, and deliver them to J. W. Stover? A. Yes.

"Q. 2. Were the bonds and coupons negotiable? A. Yes.

"Q. 3. Did J. W. Stover have the mortgage placed on record? A. Yes.

"Q. 4. Did Burns receive any consideration from Stover for said bond, coupons and mortgage? A. Did not appear in evidence.

"Q. 5. Did J. W. Stover sell the bond, coupons and mortgage sued on to the plaintiffs, and transfer the same to them by indorsement thereon before maturity? A. We agree that J. W. Stover indorsed them, and sent them to Cowles & Eldridge.

"Q. 6. Did the plaintiffs pay Stover a good consideration for said bond, coupons and mortgage? A. They did.

"Q. 7. Did the plaintiffs receive the bond and mortgage into their possession at or about the time they were transferred to them by indorsement by Stover? A. We presume they did.

"Q. 8. Did the plaintiffs then have any notice of a failure of consideration from Stover to Burns? A. It did not appear in the evidence.

"Q. 9. When did Burns sell the mortgaged premises to the defendant Clinchy? A. July 21st, 1879.

"Q. 10. When did Burns execute the deed therefor to defendant Clinchy? A. October, 1878.

"Q. 11. At that time was the mortgage in full force and effect? A. It was.

"Q. 12. When did Stover execute the release of the mortgage? A. On or about May 16, 1879.

"Q. 13. At that time did Stover have any interest in the bond, coupons and mortgage? A. We think he had.

"Q. 14. Did the defendant Clinchy personally examine the records to see whether there were any liens, mortgages or incumbrances against the land? A. We presume that he did.

"Q. 15. When did Clinchy pay Stover or Burns for the land? A. In October, 1878, and July, 1879.

"Q. 16. Was J. W. Stover authorized by the plaintiffs to loan their money in this state? A. Yes.

"Q. 17. Was J. W. Stover authorized by the plaintiffs to collect the money due on the bond, coupons and mortgage held by them and sued on in this case? A. He was.

"Q. 18. Was J. W. Stover authorized by the plaintiffs to release the mortgage held by them in this case? A. He was.

"Q. 19. At the time of and in executing the release, did J. W. Stover act as agent of the plaintiffs, or in his individual capacity? A. As agent for the plaintiffs.

"Q. 20. Did he execute the release as the act of Cowles & Eldridge, or as his own act? A. We understand the act of an agent to be the act of his principal.

"Q. 21. Did he use the plaintiffs' names in executing the release? A. No.

"Q. 22. At the time of the pretended ratifications, did J. W. Stover communicate all the facts and circumstances attending the transactions to the plaintiffs? A. We have no evidence that he did."

### QUESTIONS BY DEFENDANT CLINCHY.

"Q. 1. Did defendant Clinchy, in October, 1878, make an agreement by which he was to receive a deed free and clear of all incumbrances on the 1st of May, 1879, in consideration of the sum of one thousand dollars payable in cash, and the further sum of $1,560 payable at the time of the delivery of the deed? A. He did.

"Q. 2. Was said thousand paid in October, 1878? A. Yes.

"Q. 3. Was said $1,560 paid at the date of the delivery of the deed? A. Yes.

"Q. 4. Was such deed delivered in July, 1879? A. Yes.

"Q. 5. Was the mortgage released of record prior to the delivery of said deed? A. It was.

"Q. 6. Did Clinchy at the time of making payment and receiving his deed have any knowledge or notice that the mortgage had not been released rightfully? A. He had not.

"Q. 7. Was full payment made, prior to the commencement of this suit, of the note sued on, to the authorized agent of plaintiffs? A. We understand from the evidence that it was."

### QUESTION BY PLAINTIFFS.

"At the time of the release did J. W. Stover, in his individual capacity, pay the plaintiffs the amount due on the note and mortgage sued on? A. J. W. Stover testified that he gave them credit for them on his account."

Thereupon plaintiffs moved the court to render judgment in their favor, upon the special findings of fact found by the jury. The court overruled the motion, as also their motion for a new trial. Judgment was rendered in favor of the defendants for all costs. The plaintiffs excepted, and bring the case here.

*E. A. Barber*, for plaintiffs in error.

*J. R. Goodin*, and *Cates & Keplinger*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: In this case the jury specially found that J. W. Stover was authorized by the plaintiffs to collect the money due on the bond, coupons and mortgage sued on; that he was authorized by the plaintiffs to release the mortgage; and that at the time of executing the release he acted as their agent. On the part of the plaintiffs, it is claimed that these findings are entirely without evidence to support them. This is the material question in the case. From the record we are furnished with this testimony: Sometime in 1875, J. W. Stover was on a visit at Norfolk, Connecticut, where plaintiffs reside, and made the arrangement with them that he was to negotiate loans in Kansas, and take therefor notes and mortgages in his own name, and indorse them in blank to the plaintiffs, and divide with them the commissions for placing such loans. He was also to look after the collection of the loans. Upon his return to Kansas he commenced operations. His usual course of dealing with the plaintiffs was to take loans in his own name, have the mortgages recorded, and then indorse the paper to plaintiffs by signing his name on the back of the note and interest coupons in blank, and assigning the mortgage in the usual form. He obtained the money from plaintiffs by draft, usually drawn to the order of his bankers, Messrs. Dayton, Barber & Co., of New York city. When he had money on hand, he paid the borrower the money at the time of the execution of the notes and mortgage. If he

did not have money on hand, he made arrangements with the borrower to wait until he got the money from plaintiffs. When interest on the notes became due, he collected it by the authority and request of plaintiffs, and placed the same to their credit on their general account on his books. When interest was not paid, he foreclosed the mortgages by their instructions. When the land was sold under foreclosure, he bid the land off to them by their authority, and had sheriff's deeds issued to them and placed upon record. The lands which they held by sheriff's deeds he would sell when he could—some of them for part cash and part on time. . For the deferred payments, he would take notes and mortgages in his own name and indorse them to plaintiffs. The deeds for the lands sold by him would be made by them to the purchaser. With the approval of the plaintiffs, when he had money on hand from collections received for plaintiff, he would reloan the money and take therefor other notes and mortgages in his own name, and assign them likewise to plaintiffs. He was instructed by plaintiffs, when parties wanted to pay them money at any time, *whether the loans were due or not, to receive the money and release.* In several instances the notes and mortgages were reassigned to Stover, and the mortgages released of record. There was no difference in the release of the mortgage sued on and in cases where he released after the mortgages were reassigned to him.

On cross-examination, J. W. Stover testified among other things as follows:

"I do not know that I stated on Saturday that I had authority from plaintiffs to release this mortgage. I think I had the authority from them to release mortgages. Cowles & Eldridge both understood the manner of my doing this business. When a mortgagor wished to pay off his loan *before it became due,* he was sometimes in a hurry to have a release of his mortgage, and in all these cases I released the mortgage on receipt of the money, gave plaintiffs credit on their account, and asked them to reassign to me; and in most cases they did so." Also, "Clinchy paid the balance of the purchase-money sometime in 1879, to pay off the claim we had against the land as shown by bond for deed from Burns

to Clinchy, I may have testified on Saturday that Clinchy paid off the mortgage of Burns, but if so, he did it in the payment of a claim we had against him. That was what I meant when I stated that he paid it off. I do not know that anybody was present except the register of deeds when I released the mortgage. This was some time after I sold the mortgage to the plaintiffs. I paid them for the mortgage at the time I released it. The plaintiffs were not present to receive the money. I did not get an assignment of the mortgage back to me, but I made that payment by giving plaintiffs credit on my account. I then had a balance in my favor with them."

The evidence of the plaintiffs flatly contradicted Stover's testimony; yet the jury were the judges of the credibility of the witnesses; Stover was present before them, and it was for them, not for us, to say which of the witnesses testified truthfully. By the testimony of Stover, express authority on his part to collect the note and release the mortgage before due, was proved. The jury, therefore, had positive evidence to support the special findings referred to, and neither these special findings nor the others are inconsistent with the verdict. We are aware that the rule is, unless express authority is established *aliunde,* that the possession of the securities by the agent is the indispensable evidence of his authority to collect the principal, and that whoever pays the agent without that evidence, does so at his own risk. Yet, here express authority was established, if the jury accredited Stover—and they must have credited him, from the special findings and verdict returned by them. So, also, we fully understand the law to be, that an agent having authority to receive payment of an obligation is not authorized to receive it before it is due. But the witness Stover expressly stated that *he had authority from the plaintiffs to receive payment whether the loans were due or not, and upon payment to release the mortgages.* When money was collected on notes and mortgages, it was not the arrangement for Stover to return it at once to plaintiffs in Connecticut, but by their authority he placed the same to their credit on their account on his books, and with such funds it was his

1. Parol agency, competent evidence of.

custom to make other loans and take new notes and mortgages therefor.

As it was part of the arrangement between plaintiffs and Stover that the latter should open up and keep an account with them, and then reloan the moneys paid to him upon the notes and mortgages held by them, the note and mortgage were to all intents and purposes as fully paid to plaintiffs by Stover giving them credit upon their account, when he had a balance due him from them, as if Burns or Clinchy had actually paid the money and Stover had given plaintiffs credit on their account for it. If plaintiffs' money has been retained or embezzled by their own agent, they must suffer the loss resulting from their misplaced confidence, and the defendants cannot be expected to make that loss good.

Counsel for plaintiffs contends the court erred in permitting Stover to testify to acts done by him, tending to show that he was the agent of plaintiffs in releasing the mortgage. "Now, it is competent to prove a parol agency, and its nature and scope by the testimony of the person who claims to be the agent. It is competent to prove a parol authority of any person to act for another, and generally to prove any parol authority of any kind by the testimony of the person who claims to possess such authority." (*Howe Machine Co. v. Clark*, 15 Kas. 492.) All of the testimony from Stover concerning any acts done by him for the plaintiffs, was stated by him to have been done at their request and with their authority; therefore the objection made to the introduction of the evidence cannot be sustained.

There are one or two important questions ably and elaborately argued by the counsel for plaintiffs upon the instructions requested by them, but refused, and also as to certain portions of the charge of the court. In view, however, of the special findings of the jury, it is unnecessary to enter upon a discussion of other matters. Under the special findings of the jury, the note executed by Burns was satisfied by the agent of plaintiffs, and the mortgage executed on the same

2. Firm, when bound by acts of agent.

date also released by their agent. Upon such findings, all of
the defendants were entitled to a judgment in their favor, and
the verdict of the jury was in harmony with such findings.
Therefore the judgment of the district court must be affirmed.

All the Justices concurring.